Good morning everyone and welcome. The court apologizes for our late start. We have six cases on this morning's argument calendar. We'll begin with case number one. A set of consolidated appeals in 22-1143, 1170 and 1172.  That's the easiest way to say it. We'll begin Mr. Robinson with you. Good morning. Good morning your honors. May it please the court. My name is Ed Robinson and I represent the estate of Timothy Olson. We're asking this court to reverse the district court's determination that the shooter's endorsement in T.H.E.'s policy bars coverage for Olson's claims. That determination was wrong because under a plain language reading, that endorsement only excludes coverage for one category of fireworks displays, those that are performed by hired shooters. Here the subject fireworks display was put on entirely by volunteers and T.H.E. concedes that Olson was not hired. Accordingly, his injury claims should not have been excluded. We've set forth the language of this endorsement on page 10 of our opening brief. T.H.E. asks this court to ignore everything that comes before the conjunction or, beginning with quote, or any other person's assisting or aiding. T.H.E. argues that the first clause excludes claims by hired shooters and their assistants, whereas the second clause applies to anyone else, hired or not, who assists or aid in any display of fireworks. But it is black letter law that when reviewing policy language, the court is required to give effect and meaning to every provision and phrase in the policy language at issue. So here's the point. If coverage is already excluded, as T.H.E. argues, as to anyone assisting or aiding in any fireworks display, whether hired or not, then there's absolutely no reason to have the first category at all, which is limited to hired shooters and their assistants. And T.H.E. offers no explanation in its briefs for how its proffered construction would not render the first category completely superfluous and meaningless. Beyond that, common conventions of punctuation and structure further demonstrate that hired, the word hired is the operative term to which the entire endorsement is rooted. There is no comma before the conjunction or. As a matter of convention, commas are commonly placed before the conjunction or when intending to begin an independent clause. And conversely, the absence of a comma there supports that what comes after the word or is intended to be a dependent clause, which relates back to the prior clause. What about the application of the last antecedent rule? Why isn't that the better construction of this? By applying that, if you apply that, then hired relates back to shooters or assistants and the category of any other persons assisting, etc., is its own discrete category. I appreciate the question and I want to focus in answering that question on the phrase the fireworks display in the second clause. And so that is an indefinite article, the. The precedent of the Wisconsin Supreme Court and this court, also in a case involving Illinois law, focus on the fact that the use of the definite article the, as opposed to the indefinite article and or any, has significance and it has meaning. And so that meaning is when the word the is used, it's commonly understood to refer back to that term if that term appears before. So combined with the fact that there's no comma before that or that in the second clause, the fact that they refer to the fireworks display is further support that they're referencing back to those fireworks displays that are hired, put on by hired shooters and their assistants. Well, why do you need that language to do that work when it says earlier hired to perform fireworks displays? Why doesn't the prior reference to fireworks displays take care of what you just observed? Yeah, so I'm not sure I understand your question and it's my confusion, not yours, and I apologize. But that's exactly our point. Our point is this endorsement is trying to get at hired displays. And there's a perfectly understandable reason why the reach of this endorsement doesn't extend so far as to cover pure volunteer displays that we're dealing with in our case. Okay, I get that. But you were focusing on the fireworks displays after the or, correct, Mr. Robinson? Yes, Your Honor. Okay, and so even focusing on that, I don't know how that helps you with the point that I was asking you to respond to with respect to why isn't there just another category of or other persons assisting in everything we're talking about here relates to fireworks displays. We know that from looking at the language of this. Yes, so to answer your question, Your Honor, getting back to what I said before. Under THE's construction that that second clause is an independent second category of claims that are excluded, that would render the first part completely meaningless. The first clause is talking about displays that are put on by hired shooters and their assistants. If the second clause is really as broad as THE is arguing, and it includes bars claims by anyone and everyone that's assisting or aiding in any way whatsoever with a fireworks display, then what is the point of the first clause that's limiting it to hired shooters and their assistants? That's the problem with their interpretation. And beyond all of that, Your Honor, under Wisconsin law, the high hurdle that THE has to get over here is even if Your Honors believe that their interpretation is a plausible alternative explanation, ambiguities are construed against the drafter here, THE. So the high hurdle they have to get over is not only to convince you that their interpretation is a plausible alternative explanation or interpretation, but it's the only reasonable interpretation. And that they cannot do. Thank you, Your Honor. You're quite welcome. Okay, Mr. Young, good morning. Thank you, and may it please the Court. I'm Peter Young on behalf of the defendant appellant, Todd Zadroich. I'd like to focus on one aspect of Mr. Zadroich's claim that is unique compared to Mr. Olson's. On July 3 of 2018, Todd Zadroich was a volunteer whose duty was to hand light the mortar fuse on a 10-inch mortar at a fireworks display in Land O'Lakes, which is separate from the one at issue in Olson, and indeed his role was separate from the one in Olson. The district court erred in holding that even though Zadroich was not a shooter hired to perform fireworks displays, he is any other person assisting or aiding in the display of fireworks, thereby excluding coverage for his claim under the endorsement. Again, under Wisconsin's rules of policy construction, the policy must be construed as a whole to give meaning to all of the language. In addition, exclusions are to be narrowly construed against the insurer, especially if they're uncertain as to effect. The test is not what the insurer intended the policy to mean, but rather what a reasonable person in the position of an insured, in this case Spielbauer, would understand the policy language to mean. At page 21 of their brief, THE has taken the position that the clear intent of the endorsement was to exclude claims brought by anyone involved in any way with the display of fireworks, such as Zadroich and Olson. But I'd submit it does not matter what THE thinks the clear intent was, what matters is what a reasonable person in the position of the insured would understand. If THE intended the exclusion to be as broad as it now argues, it could have drafted it that way. In this case, a reasonable person in the position of Spielbauer would understand that shooters are precluded from coverage only if hired. If unhired shooters are lumped in with any other persons assisting or aiding in the display of fireworks, THE's having singled out shooters or their assistant hired to perform fireworks displays in that endorsement would amount to a meaningless surplus phrase. By ignoring Zadroich's role as a volunteer shooter and instead categorizing him as any other person assisting or aiding in the display of fireworks, THE District Court effectively renders the specific terms, shooters or their assistants hired to perform fireworks displays, to be superfluous, which is contrary to Wisconsin law concerning policy interpretation and construction. This is the conclusion of my brief portion of the oral argument. I see I have time remaining if THE Court has any additional questions for me. So you want to cede your time to Mr. Robinson for rebuttal? Yes, I would, Your Honor. Okay, very well. Mr. Burnett, good morning. Good morning, Your Honor. We'll hear from you. You represent Spielbauer, correct? Spielbauer Fireworks. Yeah. Your Honor, I'm going to address a different question this morning, and that's whether or not THE District Court inappropriately and prematurely eliminated Spielbauer's contractual rights to indemnity based purely on allegations without any proven facts. Mr. Burnett, can I ask you a question on that? Sure. I understand your argument, and it's an interesting argument that you've got two individuals who filed a complaint in state court, and based on that complaint, over which you have no say, you say, we don't know whether these facts are right or not. The district judge says the insurance company has no duty to defend based upon what a third party said in its complaint. It's not your complaint. You're the insured. You didn't make the complaint in state court. But do you have any law that supports the position that under the duty to defend, we should analyze that differently because it was a third-party complaint as opposed to the insured filing the complaint? No, Your Honor, I don't. I believe under Wisconsin law, the courts are quite clear, and that's the Waterwell case that I emphasize in briefing. The duty of defense is judged purely by the allegations of the complaint. But whose complaint? That's the problem here. Whose complaint? If it was your complaint, that's one thing. But it's not. It's the complaint that would give rise to the judgment. So it's not THE's complaint. It is Olson's and Zedroik's complaints that determine the duty of defense. The duty of indemnity, however, is very different. As this court said in Meridian Security, the duty of defense is judged by the plaintiff's allegations. The duty of indemnity is judged by the plaintiff's proof. Two related questions to it here. We see courts all the time in the state system, including in Wisconsin, resolve insurance cases by resolving duty to defend issues. It's not that once a duty to defend is resolved that, well, okay, the indemnification matter remains open for all purposes. And that's because of that language in those cases that you know where the courts have described the duty to defend as being broader. And related, how is it that you envision that the facts could possibly change here regarding, in particular, the Olson accident that could result in indemnification? The whole point is that, as I sit here today, and as THE sits here today, nobody knows how that accident happened. We know how the plaintiff says it happened. Why wouldn't that be the answer in every single insurance case from an injured plaintiff's perspective? That all you have the authority to do is resolve the duty to defend. And that, I'm sorry, I interrupted you. No, go ahead. You're fine. That is exactly why this court, in a dozen cases cited in the brief, says you do not decide the duty of indemnification at the beginning of the case. What's the legal consequence of, in all the Wisconsin law, where the court has said the duty to defend is broader than the duty to indemnify? That's based on a fallacy. The fallacy is that the two ideas are related. But as Meridian Security said, the duty of defense is judged by the plaintiff's allegations. The duty of indemnity is judged by the plaintiff's plea. Is that a sound proposition? Is it good law in Wisconsin, in other words? That's where the question of what the Wisconsin Supreme Court has said in the Talley case, where they explicitly overruled the Doyle decision, where the duty of defense and the duty of indemnification coverage, collectively, was inappropriate. The court in Talley said the Four Corners rule applies only to the duty of defense. And in Waterwell, the court emphasized in a footnote that the end of the duty of defense, the absence of a duty of defense, may not apply at all to indemnity. So the short answer to your question, and I'm well over my time, the court has spoken inconsistently and most recently seems to be departing from that rule. Thank you. Thanks to you, Mr. Burnett. We'll turn to counsel for the insurance company, Ms. DeConomo. Good morning, Your Honors. May I please the court? My name is DeConomo, and I represent THE Insurance Company. It's actually spelled out as opposed to them. At issue here is both a primary and an excess liability policy that THE issued to Spielbauer, which sells and distributes fireworks. The THE primary policy sets forth the coverage that is provided, but equally important, is not provided by the policy. I want to ask you a question regarding the policy matter. I understand the argument, and I understand the argument that the appellants have made, which is that it seems like Category 1 is sort of specific and then Category 2 is forget everything in Category 1, it's everybody. I understand that. But I have a question for you regarding the last phrase of Category 2, by the name ensured any shooter or any assistant. It seems to me that the way you read the policy language, and particularly Category 2, is any other person assisting or aiding in the display whether or not they are employed, period. It doesn't matter whether they're employed. So, by the name ensured any shooter or any assistant is meaningless. Why doesn't that phrase, why shouldn't we interpret that phrase to say whether or not they're employed by the name ensured any shooter or any assistant, consistent with hired to perform fireworks displayed? In other words, it doesn't matter who employs them. It doesn't matter if they're employed by any of the three. It only matters that they're employed. So, Your Honor, a few points there. The provision is written such that there are two categories of people created, correct? Hired shooters or their assistants and anybody else assisting or aiding in a fireworks display. And that latter provision follows the OR and immediately follows the language of assisting or aiding and simply makes clear that whatever their capacity is, if they're not hired, then they fall into this second category. Well, even if they are hired, they fall into the second category, right? Because the second category just says everybody. If I was to say you, you, you, and everybody else in the courtroom, that would render you, you, and you meaningless. I could just say everybody in the courtroom. I understand your question, but here's the point. To interpret whether or not any of the foregoing are employed by the name ensured any shooter or assistant as modifying hired shooters would make hired shooters and their assistants meaningless. Well, how so, though? It would be modifying somebody who's already hired. Okay, I'll think about that. Yeah, what you're saying with that argument, I think you made it in your brief, is that there's surplus language on both sides of this. I think there is. I think you can argue it on the front side like they're arguing or you can argue it on the back side like Judge Kirsch was pointing out. Because if the last, if what follows the or is just a complete catch-all, it picks up everybody. Whether they're an employee or whether they're a volunteer, you don't need the first part of it. Your Honor, that is one interpretation, but we have to deal with the- No, so the question is why is it the wrong one? Because if there's ambiguity here, the point that plaintiffs' counsel have made is a problem for your client. There is no ambiguity, number one. The argument that was proffered by opposing counsel was that THC's burden is to prove that there is, that its interpretation is the only interpretation for there not to be an ambiguity. And that's not the standard. The standard is that it's the term, it's only ambiguous if the term is fairly susceptible to more than one reasonable interpretation. We are talking about a one-paragraph, 70-word endorsement that simply makes clear that shooters, anyone involved in the display of fireworks in whatever capacity is not covered under this policy. That type of risk should have been insured under a different type of policy, not this policy. Can you address Mr. Burnett's argument about why we shouldn't preserve the possibility that the actual facts, especially with respect to the two individual plaintiffs here, could come out differently on the duty to defend vis-a-vis the duty to indemnify?  First of all, Wisconsin law is different than Illinois law, which is the Meridian case that Mr. Burnett relied on. Under Illinois law, the duty to defend and the duty to indemnify can exist even where there is no duty to defend. Wisconsin law is not the same. Wisconsin law holds that the duty to defend is broader than the duty to indemnify, and where there is no duty to defend, there is no duty to indemnify. If the broader duty does not exist, the narrower duty does not exist. And that's rooted in the concept that a duty to defend only arises where there's a potential for coverage under the complaint. And so, therefore, if there is no potential for coverage, then there could be no potential for indemnification obligation. So Wisconsin law is very different than Illinois law. So is that – if we translate that here, what I was thinking about in preparing for the argument is you'd have to have a possibility where the two named plaintiffs were not volunteers in any way, shape, or form connected to the fireworks events, but rather were spectators or bystanders or something else. And I think – I don't know what there is to suggest that. I mean, that gets so far afield from what are in those underlying complaints. Is that the right or wrong way to think about it? That's exactly the way to think about it. The exclusion does not preclude coverage. For example, if a bystander was – I mean, a spectator at a fireworks display was injured. It only precludes coverage for people involved in putting on the display. The other thing – the other – to your point, Your Honor, is, look, the nature of the insured's liability here isn't going to change on whether Olson and Zedroic were, you know, assistance or hired. It merely – it will not turn on those. It has nothing to do with the application of the exclusion or the clarity of the exclusion. There's nothing that's going to come out in the underlying case that's going to change what they did. They themselves allege, Zedroic alleges, I manually lit the fuses. I was assisting in putting on the fireworks display. For his part, Olson was a container operator. He was responsible for – he operated a metal container that stored extra fireworks, and he would open the lid when volunteers came over to get more fireworks during the course of the display. That doesn't change. That is not going to affect Spielbauer's liability, and that's also why there's no indemnity. Why is Spielbauer stuck with that complaint? In other words, why is the insured stuck with a third-party complaint when Spielbauer says these allegations made by a third party may or may not be true? They may be false. We don't – we just don't have any idea. But the insurance company says, oh, based on a third-party complaint, we have no duty whatsoever to defend Spielbauer against these allegations. You're on your own. All the cases that I could find in Wisconsin are a little bit different. They're where the third party is pleading facts that the insurance company then becomes stuck with because the court looks at the third-party complaint and says, all right, these facts include the duty to defend, and so the insurance company must defend. This is the opposite where you've got two individual plaintiffs have pled Spielbauer out of its policy while Spielbauer has got the ham in the ham sandwich here saying, wait a minute. We don't have – we don't know what's right and what's wrong, and now we have to pay for the defense. Your Honor, that goes back 60 years in Wisconsin jurisprudence. Under Wisconsin law, dating back to Grieb and cases dating – 1967 case, if not before that, perhaps Mowry v. Badger as well, an insurer's duty to defend is determined from two documents. The underlying complaint, Zedroik and Olson's complaints, number one. But I can't find – that's the thing. I can't find any case law that says that, what you're saying. I got it. I read all the cases set forth in the complaint, but those cases are the insurer's complaint. They are not the insurer's complaint, Your Honor. All of these cases involve an underlying claimant suing a defendant for alleged liabilities in whatever factual scenario. In Wisconsin, the insurer is often brought into that case as a direct action. But it is always underlying claimant versus insured, and those are the allegations that are pled against the insured. What did the insured allegedly do that led to its liability? And those cases, from those complaints, is what the duty to defend is measured against. And you're saying as a procedural matter, then you have a spinoff declaratory judgment action to declare coverage. Correct. That's the normal procedure under Wisconsin law is you move to bifurcate the coverage from the liability insurance. So is the response to Judge Kirsch's question to get at this concern that there has to be something in the complaint or some other document that bears upon a duty to defend that suggests that the alleged facts are subject to change upon ultimate findings to a degree that could bring coverage into the realistic, into the possible? And that's where I've struggled with this, because I don't see anything in the two complaints, because they would be very far afield from what's in there right now, where either Olson or Zdroik said, I was actually a spectator, or I was a bystander, or I just happened to be driving down the road while the display was going on and I was injured, or something like that. Correct. But that's very, very different than what's in those complaints today. Right. The complaints, exactly, Your Honor. Let me just be clear. The court considers the complaint as alleged, and it looks at, based on what are the facts alleged, not the legal labels, not the causes of action, but what are the facts alleged, and if those facts, again, resolving all inferences and all doubts in favor of the insured, if those facts could potentially lead to indemnity coverage, to the obligation for indemnity coverage, meaning the insurer is held liable and the insurer would have to fund that liability. That's how you determine whether a duty to defend. So where there is no such allegation, as is the case here, there is no duty to defend. And therefore, no duty to defend. So you were going to say earlier the duty to defend is defined by two things, the complaint. What's the second thing? The policy. You take the complaint, you compare it against the four corners of the policy, you look at the two documents under settled canons of contract construction, and if there's any possibility for coverage under the policy, there's a duty to defend. Where there is no possibility for coverage under the policy, based on what's pled in that complaint. So if we went, if we hypothetically drastically changed one of these complaints, and there was ambiguity as to whether, I'm just going to take one of them, as to whether Olson was a spectator or a volunteer assistant for some portion of the fireworks event, then you'd say, well, we have a different ballgame then. The duty to defend is always evolving, Your Honor. On these complaints, there is no duty to defend. If there's a material amendment to the Olson complaint, we would look at it anew. Yeah, so if the amendment was such that it's very possible that Olson was a spectator. Then I would agree with you, that that would arguably not be precluded by the shooter's endorsement, because there's a question about whether he was aiding or assisting in the display of fireworks, and therefore the duty to defend would arise in that circumstance. That is not what is pled here. Okay. Anything further you'd like to make, a point you'd like to make? Just very briefly, Your Honor. I think I've actually hit all the points in terms of this distinction between defense and indemnity that was trying to be made. In sum, I do believe that the district court properly considered the complaints in front of it, properly considered the policy language in conjunction with canons of construction, and Wisconsin law on when does a duty to defend arise. If no duty to defend can exist, there can be no duty to indemnify. They are separate but not independent under Wisconsin law. That's an important point there, separate but not independent. And therefore, correctly concluded that the shooter's exclusion plainly and unambiguously precludes coverage for the complaints at issue here. Thank you, Your Honor. Thanks to you. Mr. Robinson, we'll come back to you. Okay. Come on up. Thank you. So briefly, I think I heard counsel just say that our interpretation that her construction of the policy would render the first clause completely meaningless is one interpretation. We submit it's the only interpretation that harmonizes the entire provision, but regardless, it's at least a reasonable interpretation, and therefore, because it's susceptible to more than one reasonable interpretation, it's construed against THE. It would have been easy enough for THE to have drafted the exclusion broadly to exclude injury claims brought by anyone assisting or aiding in any fireworks display, whether or not hired or employed by anyone to do so. That's not how they drafted their language. Getting back to the issue about whether the remaining part of the provision, which says, whether or not any of the foregoing are employed by the named insured any shooter or any assistant, again, the operative term is hired. As long as it's a hired display, anyone that's assisting in that hired display is barred from coverage, whether they're employed by Spielbauer or the pyrotechnics company. My time is running up. Thank you very much. Thanks to you. Thanks to all counsel. We'll take the case under advisement.